## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

WILLIAM E. KANTZ, JR.,     )
                           )
     Plaintiff,             )
                           )
v.                           )     No. 3:14-01113
                           )     Senior Judge Haynes
                           )
RUBIN LUBLIN, PLLC, et al.,     )
                           )
     Defendants.         )

## MEMORANDUM

Plaintiff, William E. Kantz, Jr., a Tennessee citizen, originally filed this action in the Circuit Court for Davidson County, Tennessee, against Defendants, Rubin Lublin, PLLC, a Tennessee professional limited liability company, Rubin Lublin, LLC, a Georgia limited liability company, and Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"). Plaintiff asserts claims for fraud, breach of contract, violation of the Tennessee Consumer Protection Act ("TCPA") Tenn. Code Ann. § 47-18-104(b)(39), and violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 against Defendants Rubin Lublin TN, PLLC and/or Rubin Lublin LLC (collectively, "Rubin Lublin").

Plaintiff seeks declaratory relief that the Court determine that Defendant Rubin Lublin, acting as substitute trustee, failed to execute its duties under the deed of trust properly in conducting a foreclosure sale of Plaintiff's house, namely that no one appeared at the Davidson County Courthouse to cry the sale, and therefore the trustee's deed conveying the property to FHLMC was void. Plaintiff does not assert any substantive claim against Defendant FHLMC, but seeks relief

against Defendant FHLMC to set aside the trustee's deed. Defendants removed this action to this Court under 28 U.S.C. § 1331, the federal question statute.

This action arises out of Plaintiff's allegations that on February 20, 2014, at the Davidson County courthouse, no one on behalf of Defendant Rubin Lublin appeared at the foreclosure sale of Plaintiff's property to cry the sale of the property and that a sale of the property did not occur. On March 24, 2014, Plaintiff filed his action in the Circuit Court for Davidson County, Tennessee, that was later removed to this Court on May 6, 2014. Plaintiff's motion to amend his complaint was granted on May 12, 2014. (Docket Entry No. 13). On May 30, 2014, Plaintiff filed a second amended complaint. (Docket Entry No. 23). Defendant Rubin Lublin filed a motion to dismiss for failure to state a claim (Docket Entry No. 29).

On June 27, 2014, the Court conducted a case management conference. The Court stayed all proceedings for sixty (60) days and gave Plaintiff 30 days to arrange the repurchase of the property. The Court gave Defendant Rubin Lublin 30 days within which to arrange notice and foreclose on the property if Plaintiff failed to repurchase the property. Thereafter, the parties were to brief whether the claims were mooted. On August 26, 2014, Defendant Rubin Lublin filed notice that it held a trustee's sale, foreclosing on Plaintiff's property. (Docket Entry No. 43, Report of Trustee's Sale). On September 2, 2014, the Court granted Defendant Rubin Lublin's motion to stay discovery (Docket Entry No. 41) pending briefing on the mootness of claims and a ruling on Defendant Rubin Lublin's motion to dismiss (Docket Entry No. 29). See Docket Entry No. 46.

Before the Court is Defendant Rubin Lublin's motions to dismiss for failure to state a claim (Docket Entry No. 29); Defendant Rubin Lublin's motions to dismiss as moot (Docket Entry No. 49); Defendant FHLMC's motion to dismiss (Docket Entry No. 47); Plaintiff's motion for leave to

file third amended complaint (Docket Entry No. 61); Plaintiff's motion for clarification of response dates and/or request for briefing schedule (Docket Entry No. 67); Plaintiff's motion to accept memorandum of law in support of response to Defendant Rubin Lublin's motion to dismiss (Docket Entry No. 68); and Plaintiff's motion for partial summary judgment (Docket Entry No. 72).

In its motion to dismiss (Docket Entry No. 47), Defendant FHLMC contends that, as a result of the subsequent August 26, 2014 foreclosure sale, Plaintiff's claims against this Defendant are moot. Specifically, Defendant FHLMC contends that because the only relief sought against it is to set aside the initial trustee's deed arising from the February 20, 2014 foreclosure sale the recording of a new trustee's deed, following the second foreclosure sale on August 26, 2014, renders any claims against FHLMC as to the first foreclosure sale moot.

Plaintiff filed a response in opposition (Docket Entry No. 62) contending that he has filed a motion for leave to file a third amended complaint (Docket Entry No. 61) that asserts additional claims against FHLMC. Specifically, Plaintiff contends that the claims asserted against Defendant FHLMC in the third amended complaint, including violation of the Real Estate Settlement Practices Act, Fair Debt Collection Practices Act, Truth in Lending Act, and Tennessee Consumer Protection Act, relate to FHLMC's conduct following the initial February 20, 2014 foreclosure sale and are not rendered moot by the second foreclosure sale.

In its motion to dismiss as moot (Docket Entry No. 49), Defendant Rubin Lublin contends that because Plaintiff was given an exclusive opportunity to buy the property following the Court's June 27, 2014 case management conference and a new sale was completed on August 26, 2014 by the same purchaser and at the same sales price as the February 2014 sale, Plaintiff's claims are therefore moot. Defendant Rubin Lublin argues that to the extent any claims are not mooted by the

3

subsequent property sale these claims should be dismissed for failure to state a claim based upon the reasons stated in its prior motion to dismiss (Docket Entry No. 29).

In that motion, Defendant Rubin Lublin contends that: (1) Rubin Lublin, LLC should be dismissed as the appointment of substitute trustee and substitute trustee's deed reflect that the only trustee of the deed of trust was Rubin Lublin TN, PLLC; (2) the substitute trustee's deed is prima facie evidence that the sale took place and that notice was sent; (3) plaintiff has failed to properly plead a claim for fraud under Fed. R. Civ. P. 9(b); (4) Plaintiff cannot show the existence of a contract between him and Defendant Rubin Lublin as the deed of trust contains covenants only between the "Borrower and Lender;" (5) Plaintiff fails to identify the provision of the alleged contract that was breached; (6) an allegation of no notice or improper notice is implausible as Plaintiff had some notice of the foreclosure sale; (7) Plaintiff fails to state properly a claim under the TCPA as Plaintiff fails to set forth any particular allegations of intentionally fraudulent conduct or show any detrimental reliance; and (8) that Plaintiff fails to specify which provision under the FDCPA that he believes was violated or to show that Defendant Rubin Lublin qualifies as a debt collector.

Plaintiff did not file a response to Defendant Rubin Lublin's Rule 12(b)(6) motion, but filed a response (Docket Entry No. 65) to Defendant Rubin Lublin's motion to dismiss as moot (Docket Entry No. 49), asserting that the motion should be denied as he has filed a motion for leave to file a third amended complaint (Docket Entry No. 61). Plaintiff asserts, in essence, that the third amended complaint includes violations of the Real Estate Settlement Practices Act, Fair Debt Collection Practices Act, Truth in Lending Act, and Tennessee Consumer Protection Act that relate

4

to Defendant Rubin Lublin's conduct following the initial February 20, 2014 foreclosure sale and are not rendered moot by the second foreclosure sale.

Plaintiff filed a second response (Docket Entry No. 66) to Defendant Rubin Lublin's motion to dismiss as moot, asserting his motion for leave to file a third amended complaint as a bases for denying Defendant Rubin Lublin's motion to dismiss. Plaintiff also asserts that he could have purchased the property on February 20, 2014, had the foreclosure sale actually been conducted; that Defendant Rubin Lublin and Bank of America, N.A. ("BANA") intentionally inflated the price following the June 27, 2104 case management conference to prevent him from repurchasing his property; and that Plaintiff is not required to have any damages to seek a declaratory judgment that an act or practice violates the TCPA.

In his motion for partial summary judgment (Docket Entry No. 72), Plaintiff contends that Defendant Rubin Lublin violated Tenn. Code Ann. §47-18-104(b)(39) of the TCPA by falsely representing that it or its agent conducted the foreclosure on Plaintiff's house when it knew that the foreclosure was not actually conducted as advertised. In response (Docket Entry No. 79), Defendant Rubin Lublin contends that Plaintiff's motion is unsupported by evidence as Plaintiff's "affidavit" is neither signed nor notarized and fails to set forth any facts that can support a claim that Defendant Rubin Lublin violated the TCPA; that the TCPA does not apply in this action; Plaintiff fails to prove the elements of a TCPA claim; and that Plaintiff's motion is premature as no answers have been filed by any Defendant, Defendants Rubin Lublin and FHLMC have pending dispositive motions, and the Court has stayed discovery until these motions are decided.

## A. PLAINTIFF'S MOTIONS FOR EXTENSION OF TIME AND FOR CLARIFICATION

5

The Court granted Plaintiff three extensions of time to file a response to Defendants' motions to dismiss, giving Plaintiff from October 3, 2014 to October 27, 2014 to file a response. (Docket Entry Nos. 52, 55 and 59). After granting the third extension, the Court warned Plaintiff it was the final extension. (Docket Entry No. 59). On October 27, 2014, Plaintiff filed a response (Docket Entry No. 65) to Defendant Rubin Lublin's motion to dismiss as moot (Docket Entry No. 49). On October 28, 2014, one day past the deadline extension, Plaintiff filed his memorandum in support of his response (Docket Entry No. 66) to Defendant Rubin Lublin's motion to dismiss as moot.

On October 29, 2014, Plaintiff filed a motion to accept his late filed memorandum of law in support of his response to Defendant Rubin Lublin's motion to dismiss (Docket Entry No. 68). In response (Docket Entry No. 69), Defendant Rubin Lublin asserts that Plaintiff fails to show excusable neglect to obtain an extension of time to respond to the rule 12(b)(1) motion as Plaintiff has offered no reason why his response was not timely filed and the record reflects that Plaintiff had time to draft and file a proposed third amended complaint.

The Court notes that Defendant Rubin Lublin's response is well taken, but in the Court's discretion, will grant Plaintiff's motion to accept memorandum of law in support of response to Defendant Rubin Lublin's motion to dismiss (Docket Entry No. 68) as the memorandum mainly asserts the allegations in his proposed third amended complaint.

Also, on October 29, 2014, in reference to Defendant Rubin Lublin's motion to dismiss for failure to state a claim (Docket Entry No. 29), Plaintiff filed a motion for clarification of response dates and/or request for briefing schedule (Docket Entry No. 67). Plaintiff "request[s] that the Court set a deadline for the response, if required," stating that Plaintiff believed that Defendant Rubin Lublin's motion to dismiss as moot (Docket Entry No. 49) replaced the prior motion to dismiss

(Docket Entry No. 29). (Docket Entry No. 67 at 1) (emphasis in original). Plaintiff also seeks that the discovery stay be lifted. In response (Docket Entry No. 69), Defendant Rubin Lublin asserts, among other things, that it made clear in its 12(b)(1) motion that any claims not deemed moot were still due to be dismissed based on the arguments in the pending 12(b)(6) motion. (Docket Entry No. 69 at 9, citing Docket Entry No. 50 at 4).

Defendant Rubin Lublin filed its Rule 12(b)(6) motion to dismiss on June 13, 2014, giving Plaintiff, pursuant to Local Rule 7.01(b) and Fed. R. Civ. P. 6(d), until June 30, 2014 to file a response. The action, however, was stayed on June 27, 2014 until the foreclosure sale on August 26, 2014, giving Plaintiff until August 29, 2014 to respond. Plaintiff contends that he did not file a response to the Rule 12(b)(6) motion because he accepted Defendant Rubin Lublin's Rule 12(b)(1) motion as a replacement for the Rule 12(b)(6) motion and that "[t]his idea was further strengthened by Rubin Lublin's overlapping arguments." (Docket Entry No. 67 at 1). Yet, Defendant Rubin Lublin's Rule 12(b)(1) motion was filed on September 11, 2014, thirteen days after Plaintiff's response was due. Further, in its Rule 12(b)(1) motion, Defendant Rubin Lublin specifically states that "[i]n the event that this Court finds that any claims have not been mooted, the Rubin Defendants assert that the claims are still due to be dismissed for failure to state a claim upon which relief can be granted, and have a pending motion to that effect." (Docket Entry No. 50 at 4). Defendant Rubin Lublin also notes that Plaintiff's response deadline "has long passed and the motion is now deemed unopposed pursuant to LR 7.01(b)." Id. at 4 n.1. Despite Defendant Rubin Lublin's assertions, Plaintiff waited until October 29, 2014 to file its motion for clarification.

Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: on motion

made after the time has expired if the party failed to act because of excusable neglect." Factors to be considered when determining the existence of excusable neglect are: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." Nafziger v. McDermott Intern., Inc., 467 F.3d 514, 522 (6th Cir. 2006) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

The Court concludes that Plaintiff has failed to show any basis for excusable neglect as Plaintiff's reasons are contrary to the factual record and Plaintiff was given three extensions to file responses. Further, Plaintiff's request that the discovery stay be lifted should be denied as the Court stayed discovery until the motions to dismiss were decided. Accordingly, the Court concludes that Plaintiff's motion for clarification should be denied.

## B. ANALYSIS OF THE MOTION TO FOR LEAVE TO AMEND COMPLAINT[1,2]

---

[1]Where a dispositive motion and a motion to amend the complaint are pending, a district court abuses its discretion if the court fails to consider and rule on a plaintiff's pending motion to amend the complaint. Ellison v. Ford Motor Co., 847 F.2d 297, 300-01 (6th Cir. 1988). "This is not to say that the court [is] required to grant plaintiff's motion. Rather, . . . the district court should evaluate the pending motion in light of the amendment policy embodied in the Federal Rules and should provide a reasoned explanation for its action." Id. at 301; Thompson v. Superior Fireplace Co., 931 F.2d 372, 374 (6th Cir.1991) ("'[W]hen a motion to amend is not even considered, much less not granted, an abuse of discretion has occurred.'") (citation omitted).

[2]The Court will consider Defendants' motions to dismiss and their opposition to Plaintiff's motion to amend to determine the futility of Plaintiff's proposed third amended complaint. Zundel v. Mukasey, No. 3:03-cv-105, 2009 WL 3785093, at *3 (E.D. Tenn. Nov. 10, 2009); Clendenning v. NewPage Corp., No. 3:09-cv-493, 2010 WL 3991949, at *3 (S.D. Ohio Oct. 12, 2010); Crump v. Tcoombs & Associates, LLC, No. 2:13cv707, 2014 WL 4748520, at *5 (E.D. Va. Sept. 23, 2014).

Plaintiff moves the Court for leave to file a third amended complaint and alleges, in essence, that the February and post-stay foreclosure sales were fraudulent and failed to comply with any of the terms and conditions of the underlying note and deed of trust. Plaintiff includes BANA and Blank Rome, LLP as Defendants. Plaintiff asserts the following claims: (1) a declaratory judgment that both the February and August foreclosure sales are void and for a declaration that Defendant Rubin Lublin committed fraud, (Docket Entry No. 61-1 at ¶¶ 85-92); (2) "fraud in the February 20, 2014 foreclosure sale," id. at ¶¶ 93-98; (3) "fraud in the August 26, 2014 foreclosure sale," id. at ¶¶ 99-103; (4) breach of contract, id. at ¶¶ 104-110; (5) "return of property," id. at ¶¶ 111-115; (6) violation of the Tennessee Consumer Protection Act, id. at ¶¶ 116-125; (7) violations of the Fair Debt Collection Practices Act ("FDCPA"), id. at ¶¶ 126-151; (8) violations of RESPA and the Truth in Lending Act ("TILA"), id. at ¶¶ 152-157; and (9) conspiracy, id. at ¶¶ 158-168.

Plaintiff originally filed this action in state court and subsequently filed an amended complaint. (Docket Entry No. 1-1). After removal of the action to federal court, this Court granted Plaintiff leave to file an amended complaint and a second amended complaint. (Docket Entry Nos. 21 and 22). Plaintiff seeks to file a third amended complaint, comprised of 30 pages and 168 paragraphs, adding two parties, 21 pages, 122 paragraphs and three counts to the previously filed second amended complaint, comprising of 9 pages and 46 paragraphs. In sum, Defendants contend that Plaintiff's proposed third amended complaint is a futile "shotgun" complaint consisting of disjointed speculative claims based upon false premises that fails to specify which count is directed at which defendant; that any claims regarding the February foreclosure sale were rendered moot by the subsequent August foreclosure sale; that the complaint alleges contradictory and demonstrably

9

false facts; and that the complaint fails to allege sufficient factual matter to state a claim to relief that is plausible on its face.

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend a complaint should be freely given "when justice so requires," id.; see Riverview Health Institute LLC v. Medical Mutual of Ohio, 601 F.3d 505, 520 (6th Cir. 2010), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. Saint Torrance v. Firstar, 529 F. Supp.2d 836, 845 (S.D. Ohio 2007) (citing Brooks v. Celeste, 39 F.3d 125, 130 (6th Cir. 1994)); see Brooks v. Celeste, 39 F.3d 125, 130 (6th Cir. 1994) ("'Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision.'") (citations omitted). "'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.'" Riverview, 601 F.3d at 512 (citations omitted).

Additionally, Rule 9(b) of the Federal Rules of Civil procedure states that "a party must state with particularity the circumstances constituting fraud[.]" See Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 322 (6th Cir. 1999) ( "'[A]llegations of fraudulent

misrepresentation[s] must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made.'") (citation omitted).

> [A] complaint is sufficient under Rule 9(b) if it alleges the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud, and enables defendants to prepare an informed pleading responsive to the specific allegations of fraud.

United States ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 518 (6th Cir. 2009) (internal quotations omitted). "A court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." Sanderson v. HCA–The Healthcare Co., 447 F.3d 873, 876 (6th Cir. 2006) (citing Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006)). Also, "[c]onclusory statements of reliance are not sufficient to explain with particularity how [a plaintiff] detrimentally relied on the alleged fraud." Evans v. Pearson Enters., 434 F.3d 839, 852–53 (6th Cir.2006) (citing Smith v. Mitlof, 198 F. Supp.2d 492, 504–05 (S.D.N.Y. 2002)) (holding that the complaint's allegation that the plaintiffs reasonably relied on the fraudulent representations was insufficient to meet the heightened pleading requirements of Rule 9(b)).

"Article III of the Constitution confines the power of the federal courts to adjudication of 'cases' or 'controversies.' The mootness doctrine, a subset of the Article III justiciability requirements, demands a live case-or-controversy when a federal court decides a case." Kentucky Right to Life, Inc. v. Terry, 108 F.3d 637, 644 (6th Cir. 1997) (citations omitted). "Mootness results when events occur during the pendency of the litigation which render the court unable to grant the requested relief." Berger v. Cuyahoga Cnty. Bar Ass'n, 983 F.2d 718, 724 (6th Cir.1993).

Defendant Rubin Lublin and Defendant FHLMC have both filed motions to dismiss this action as moot under Fed. R. Civ. P. 12(b)(1). Defendant Rubin Lublin also has filed a motion to

dismiss for failure to state a claim under Rule 12(b)(6). The Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim for lack of subject matter jurisdiction that may consist of either a "facial attack" or a "factual attack." O'Bryan v. Holy See, 556 F.3d 361, 375 (6th Cir. 2009).

> "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." And, "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true.... If those allegations establish federal claims, jurisdiction exists." However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

Id. at 375-76 (citations omitted). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). On a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (citation omitted). "[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of proof that jurisdiction exists under 12(b)(1). RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996). Here, the Court construes the Defendants' motions as a factual attack.

Upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to

12

relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th

Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (citation omitted). The Court must

"'construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true,

and draw all reasonable inferences in favor of the plaintiff.'" In re Travel Agent Com'n Antitrust

Litig., 583 F.3d 896, 903 (6th Cir. 2009) (citation omitted). However, the Court "'need not accept

as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal

conclusions masquerading as factual allegations will not suffice.'" Id. (citations and quotation marks

omitted).

In Ashcroft v. Iqbal, the Supreme Court explained the requirements for sustaining a motion

to dismiss under Fed. Rule Civ. Proc. 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and
> plain statement of the claim showing that the pleader is entitled to relief." As the
> Court held in Twombly, 550 U.S. 544 (2007), the pleading standard Rule 8
> announces does not require "detailed factual allegations," but it demands more than
> an unadorned, the-defendant-unlawfully-harmed-me accusation. Id. at 555 (citing
> Papasan v. Allain, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and
> conclusions" or "a formulaic recitation of the elements of a cause of action will not
> do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "makes assertion[s]"
> devoid of "further factual enhancement." Id. at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter,
> accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570.
> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant has acted
> unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with"
> a defendant's liability, it "stops short of the line between possibility and plausibility
> of 'entitlement to relief.'" Id., at 557 (brackets omitted).
>
> Two working principles underlie our decision in Twombly. First, the tenet that a
> court must accept as true all of the allegations contained in a complaint is
> inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice. Id. at 555. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d. Cir. 2007). But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not "show[n]", "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

556 U.S. at 677-79.

As the Sixth Circuit stated, "[a] motion under Rule 12(b)(6) is directed solely to a complaint itself . . .." Sims v. Mercy Hosp., 451 F.2d 171, 173 (6th Cir. 1971); see also Passa v. City of Columbus, 123 Fed.Appx. 694, 698 (6th Cir. Ohio 2005). Yet, in evaluating a plaintiff's complaint, under Fed. Rule Civ. Proc. 10(c), any matters attached to the pleadings are considered part of the pleadings as are documents that a defendant attaches to a motion to dismiss that are referred to in the complaint and "central" to the claim. Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997); Rondigo, L.L.C. v. Township of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011) ("[A] court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment.") (quoting Bassett v. National Collegiate Athletic Ass', 528 F.3d 426, 430 (6th Cir. 2008)).

Consistent with the Court's instructions, Defendants conducted a foreclosure sale of Plaintiff's property on August 26, 2014, and thereafter filed briefs on the issue of mootness. Plaintiff's proposed third amended complaint reiterates many of the same claims and allegations in the second amended complaint, challenging the February foreclosure sale and also seeks to invalidate the August 26 foreclosure sale.

Based upon a review of Plaintiff's proposed third amended complaint, the Court concludes that Plaintiff's motion for leave to amend should be denied as futile. As discussed infra, the August foreclosure sale cured any alleged defects from the February foreclosure sale and moots many of Plaintiff's claims. Also, Plaintiff's complaint is confusingly pled, contains false and contradictory factual allegations, and fails to allege sufficient factual matter that is plausible on its face.

In his proposed amended complaint, Plaintiff alleges:

51. Although Bank of America only paid **$398,126.15** to purchase the property at the February 20, 2014 foreclosure sale, on July 11, 2014, FHLMC's counsel demanded Mr. Kantz pay "the entire indebtedness" **(over $460,000)** to re-purchase his own home. Mr. Humbracht's letter states:

> ...if your client wishes to purchase the property, he may be able to do so by paying the entire indebtedness in full. (Exhibit H) (underline added);

52. By demanding over **$60,000.00 more** than Bank of America paid to purchase the property at the faux-February 20, 2014 foreclosure sale, FHLMC was attempting to garner an illegal sale profit for itself and/or Bank of America. (Admittedly, after Mr. Kantz's 30-day opportunity to purchase his property expired, FHLMC lowed its demand to only $433,594.13);

53. By demanding over **$60,000.00 more** than Bank of America paid to purchase the property at the faux-February 20, 2014 foreclosure sale, FHLMC was violating the Court's instructions as reflected in the June 27, 2014 Minute Entry;

54. Mr. Kantz was financially able to purchase the Property on February 20, 2014 for **$398,126.15**. However, by July 2014, his fortunes had changed and he was unable to pay the **$460,000+** demanded by FHLMC;

(Docket Entry No. 61-1 at ¶¶ 51-54) (emphasis in original).

In Plaintiff's June 30, 2014 letter to Defendant FHLMC, Plaintiff offered to purchase the property for $200,000 "for free and clear title." (Docket Entry No. 71-2). On July 11, 2014, FHLMC's counsel responded, "I forwarded your settlement proposal to my client, [FHLMC]. [FHLMC] has rejected it. However, if your client wishes to purchase the property, he may be able to do so by paying the entire indebtedness in full." (Docket Entry No. 71-1).[3]

Based upon Plaintiff's filings, Plaintiff's indebtedness at the time of the February foreclosure sale totaled over $420,000.00. (Docket Entry No. 61-10). The note was payable in 360 monthly installments of principal and interest, accruing interest at 5.875% per annum. Id.; Docket Entry No. 61-22 at 10-13. Plaintiff made his last loan payment in September 2012, and the loan has been in default since September 2012. At that time of default, the outstanding principal balance was $365,736.09. Interest accrued on that balance from September 2012 thru February 2014 at the rate of 5.875%. Thus, the principal amount due on the loan was $365,736.09 and past due interest of $32,230.49 had accrued. The total amount of principal and interest due on the note was $397,966.58. The payment history reflects that during default, BANA made payments for property taxes and insurance such that prior to February 2014, there was a negative $19,082.37 balance in the escrow account. The total debt owed at the time of the February foreclosure was $417,048.95. Further, the mortgage and note provide that Plaintiff is liable for all costs, including reasonable

---

[3]The Court notes that the sentences, "I forwarded your settlement proposal to my client, Freddie Mac. Freddie Mac has rejected it," are blacked out in Plaintiff's exhibit in support of ¶ 51. (Docket Entry No. 61-9).

attorneys' fees. (Docket Entry No. 61-22 at 11). Plaintiff does not allege that he does not owe this debt. Nor does he allege that he has made any payments since September 2012. Between February 2014 and August, interest continued to accrue on the note in the amount of $1,790.58 per month. Thus, Defendant FHLMC did not demand Plaintiff pay an amount "over $60,000 more" than the bid price.

Further, the deed of trust provides the borrower with the right to cure his default prior to foreclosure if the borrower (a) pays the lender all sums which would be due under the security instrument and the note as if no acceleration had not occurred; (b) cure any default of any other covenant or agreement; (c) pay all expenses incurred in enforcing the security instrument, including, but not limited to, reasonable attorneys' fees and other fees incurred for the purposes of protecting the lender's interest in the property; and (d) takes such action as the lender may reasonably require to assure that the lender's interest in the property and rights under the note and the borrower's obligation to pay continue unchanged. (Docket Entry No. 61-2 at 12, ¶ 19).

Based upon the cited exhibits, the Court concludes that Plaintiff's above allegations are factually implausible as the attached exhibits do not support these allegations. See HMS Prop. Mgmt. Group, Inc. v. Miller, 69 F.3d 537 (6th Cir. 1995) ("[A] court may disregard allegations contradicted by facts established in exhibits attached to the pleading.").

Further, Plaintiff argues contradictory factual allegations that the February foreclosure sale was improperly conducted, yet the August foreclosure sale was improper because the foreclosure sale did take place in February. For example, Plaintiff alleges:

> 20. At 11:00 AM, no person appeared in behalf of Bank of America, Rubin Lublin TN, PLLC and/or Rubin Lublin LLC to "cry the sale" at the allotted time and place;

. . .

44. FHLMC never paid Bank of America $398,126.15 to purchase the property from the February 20, 2014 sale. The contrary representation in the Substitute Deed of Trust was a fraud upon Mr. Kantz and the public. Bank of America never received payment from FHLMC in the amount of $398,126.15 as part of 2014 sale the February 20,. The contrary representation in the Substitute Deed of Trust was a fraud upon Mr. Kantz and the public;

. . .

61. FHLMC knew or should have known on August 4, 2014 that it had no right to purchase the Note from Bank of America, and that any such transfer/purchase clearly violated Mr. Kantz's Deed of Trust, and exceeded the Substitute Trustee's legal authority;

62. FHLMC knew that on August 4, 2014, that it had purchased the Property from Bank of America on or about February 20, 2014, and therefore had no right to demand any sums from Mr. Kantz under the Note it did not own;

. . .

66. Once the Property was sold to FHLMC in February, the Deed of Trust was (or should have been pursuant to Tennessee law) released and Bank of America's Substitute Trustee no longer had any authority to take any action with regard to the Property;

. . .

97. The entire February 20, 2014 foreclosure sale was a sham, orchestrated to allow Bank of America to purchase the property for $398,126.15, then sell it to FHLMC for approximately $420,000, pocketing the $22,000.00 difference while demanding Mr. Kantz pay the entire remaining Note balance;

. . .

140. In addition, Bank of America charged Mr. Kantz for securing a "force-placed" insurance policy on February 24, 2014, effective February 21, 2014. However, on February 20, 2014, Bank of America sold the Property and no longer had an "insurable interest" in the same. (Blank Rome's letter even contains a copy of the March 6, 2014 Substitute Trustee's Deed showing the clear and unequivocal sale to FHLMC (Exhibit V, page 31)). The charging of postforeclosure sale insurance

premiums is fraudulent, a breach of the deed of trust, and violates the FDCP Act, RESPA and the Truth in Lending Act;

(Docket Entry No. 61-1 at ¶¶ 20, 44, 61-62, 66, 97, 140).

The Court concludes that these allegations are factually implausible because if the initial foreclosure sale did not occur then the rights of the parties to the note and deed of trust were not affected by the void sale. If the sale did occur, the rights of the parties were established at that date. Moreover, Plaintiff's allegations ignore the fact that Defendants acted upon pursuant to the Court's Order at the June 27, 2014 case management conference in conducting the August foreclosure sale.

As to Plaintiff's specific claims, for his claim for declaratory relief Plaintiff seeks the Court to declare that BANA and Defendant Rubin Lublin (1) "failed to properly execute its duties under the Deed of Trust at both the February 20, 2014 and August 26, 2014 foreclosure sales," including failing to appear and properly cry the February foreclosure sale, (Docket Entry No. 61-1 at ¶¶ 86-87); (2) that BANA and Defendant Rubin Lublin "failed to properly conduct the August 26, 2014 sale, and the sale is also invalid due to the numerous breaches of the Deed of Trust," id. at ¶ 88; (3) that Defendant Rubin Lublin "intentionally and willfully misrepresented to [Plaintiff] that the February 20, 2014 foreclosure sale had been properly cried," id. at ¶ 90; (4) that Defendant Rubin Lublin "intentionally and willfully misrepresented to [Plaintiff] and the Court that it had the authority and to conduct the August 26, 2014 foreclosure sale, and then misrepresented that the same was in fact properly cried and conducted," id. at ¶ 91; and that Plaintiff is entitled to a return of his residence. Id. at ¶ 89.

Requests for a declaratory judgment in federal court actions are governed by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that provides that "[i]n a case of actual controversy within its

jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[4] As to those those declaratory-judgment actions that satisfy the case-or-controversy requirement, the Supreme Court has stated:

> Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), we summarized as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (internal citation omitted).

Here, the August foreclosure sale cured any defects from the February sale. As discussed infra, there are not any factual allegations supporting the claim that the August foreclosure was not properly noticed or cried. Further, Plaintiff does not have a right to the return of his property as the exhibits reflect that Plaintiff has not made any payments toward the loan since September 2012.

Plaintiff's claim against Defendant Rubin Lublin for "fraud in the February 20, 2014 foreclosure sale" for "their failure to comply with the Deed of Trust's requirements" is mooted by the subsequent August foreclosure sale. (Docket Entry No. 61-1 at ¶ 94). Moreover, Plaintiff fails to allege that Plaintiff detrimentally relied upon any allegedly false statement as required under

---

[4]Upon removal, federal courts analyze a state law declaratory judgment action under 28 U.S.C. § 2201. Mitchell v. General Motors LLC, 2014 WL 1319519, at *16 (W.D. Ky. March 31, 2014); Miller v. Northland Ins. Co., No. 4:11-cv-26, 2012 WL 1108131, at *6 n.2 (E.D. Tenn. March 31, 2012).

Tennessee law. To establish a claim for fraudulent or intentional misrepresentation, a plaintiff must prove that:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

Walker v. Sunrise Pontiac-GM Truck, Inc., 249 S.W.3d 310, 311 (Tenn. 2008) (citations omitted). "The proper measure of damages for fraud is that the injured party should be compensated for actual injuries sustained by placing him or her in the same position he or she would have been had the fraud not occurred." Harrogate Corp. v. Sys. Sales Corp., 915 S.W.2d 812, 817 (Tenn. Ct. App. 1995). Further, "[p]unitive damages cannot be recovered in the absence of actual damages." Keith v. Murfreesboro Livestock Market, Inc., 780 S.W.2d 751, 755 (Tenn. Ct. App. 1989).

Accordingly, this claim against Defendant Rubin Lublin fails to state a claim and should be dismissed as futile.

The proposed third amended complaint is not clear whether Plaintiff is also alleging a fraud claim against BANA for the February foreclosure sale. Plaintiff alleges that the "February 20, 2014 foreclosure sale was a sham, orchestrated to allow Bank of America to purchase the property for $398,126.15, then sell it to FHLMC for approximately $420,000, pocketing the $22,000.00 difference while demanding Mr. Kantz pay the entire remaining Note balance." (Docket Entry No. 61-1 at ¶ 97). Yet, the previously cited exhibits reflect that Plaintiff's indebtedness exceeded the amount of the bid. Moreover, this possible allegation of fraud against BANA fails to plead with the particularity required by Rule 9. See Sanderson, 447 F.3d at 877 (Rule 9(b) requires the plaintiff to specify the "who, what, when, where, and how of the alleged fraud").

21

As to the claim for "fraud in the August 26, 2014 foreclosure sale," Plaintiff alleges"

FHLMC, Bank of America, Rubin Lublin TN, PLLC and/or Rubin Lublin LLC committed intentional and willful fraud by their failure to comply with the Deed of Trust's requirements, including, but not limited to, proper notice and crying of the sale, pre- and postsale deception concerning the alleged sale, and the immediate sale/transfer of interest in the properly to FHLMC (an insider) at a prices grossly below its non-fair market value, but at a profit for itself;

FHLMC's fraudulent acts include:

> a) FHLMC's demand that Mr. Kantz pay of the entire indebtedness when knew and or should have known that it did not and could not have owned the Note under the specific terms of the Deed of Trust.
> b) FHLMC's demand that Mr. Kantz pay $460,000.00+ for a property it purchased in February 2014 for approximately $420,000, and thus attempting to make a $40,000.00+ profit on its and Bank of America's intentional fraud;
> c) FHLMC's deception to the Court at the June 27, 2014 Case Management Conference in which is offered to sell (with no intent to perform) the property at the price it paid at the February 20, 2014 sale;
> d) FHLMC's in-court deception at the June 27, 2014 Case Management Conference when it implied that it was the Property owner, when in fact it later claimed to be the Note holder;
> e) FHLMC's fraud on Mr. Kantz when, knowing that it did not hold the Note or deed of trust, proceeded to direct its agents, Rubin Lublin TN PLLC and/or Rubin Lublin LLC, to orchestrate a sham foreclosure sale of the same with no legal basis;
> f) FHLMC's fraud on Mr. Kantz and the public when it published the Notice of Sale which failed to identify the Note holder and the authority under which the sale was permitted;

In the summer of 2014, FHLMC knowing that the February foreclosure sale was not been conducted and that the Substitute Trustee's Deed was a fraud, demanded Mr. Kantz pay at least $461,359.51 to redeem his home, $63,233.36 more than Bank of America paid to purchase the property on February 20, 2014. Bank of America and FHLMC's attempt to profit on their own fraudulent conduct is despicable and actionable[.]

(Docket Entry No. 61-1 at ¶¶ 100-02).

The record shows that Defendant Rubin Lublin advertised the August foreclosure sale and prepared a notice of sale. (Docket Entry No. 61-14). Plaintiff does not make specific factual allegations that the notice failed to comply with the provisions of Tenn. Code Ann. §§ 35-5-101 or 35-5-104 or that the notice was not provided to plaintiff. (Docket Entry No. 61-15). Nor does Plaintiff allege that BANA or FHLMC was involved in the preparation of the notice. Further, Tenn. Code Ann. § 35-5-106 provides that "[s]hould the officer, or other person making the sale, proceed to sell without pursuing the provisions of this chapter, the sale shall not, on that account, be either void or voidable." Further, there is no allegation of detrimental reliance. See Walker, supra.

Accordingly, for theses reasons, the Court concludes that this claim is futile.

Plaintiff's breach of contact claim alleges that "Bank of America, itself and through its agents Rubin Lublin TN, PLLC and/or Rubin Lublin LLC, intentionally and willfully breached the Deed of Trust by failing to comply with the Deed of Trust's clear and exact post-invocation of the deed's 'power of sale' provisions." (Docket Entry No. 61-1 at ¶ 105). Plaintiff alleges that the violations of the February and August 2014 foreclosure sales, "include but not limited to, improper notice, improper crying of the sale, post-sale deception concerning the alleged sale, and the immediate sale/transfer of interest of the properly to an insider at a non-fair market value, the profiting by Bank of America by immediately selling the property at a profit; and conspiring with FHLMC to demand [Plaintiff] pay $63,233.36 more than the foreclosure sale price to redeem his home." Id.

As to Plaintiff's breach of contract claim under Tennessee law, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." Arc LifeMed, Inc. v. AMC-Tennessee, Inc., 183 S. W.3d 1, 26 (Tenn. Ct. App. 2005) (citation and

23

quotation marks omitted); Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, 79 F.3d 496, 514 (6th Cir. 1996). "The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have been in had the contract been performed. However, it is well settled law that the injured party is not to be put in a better position by recovery of damages for breach of contract than he would have been in if the contract had been fully performed." Action Ads, Inc. v. William B. Tanner Co., Inc., 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979) (citations omitted).

As stated previously, FHLMC did not demand Plaintiff to pay $63,233.36 more than the foreclosure sale price. Nor does Plaintiff allege that a contract existed between Plaintiff and FHLMC. Moreover, any claim stemming from the February foreclosure sale is moot as Plaintiff has not suffered any damages. Plaintiff also fails to allege any specific provisions of a contract that were breached and by whom, but relies upon conclusory allegations with no factual allegations in support. Therefore, the Court concludes that this claim should be denied as futile.

Next, Plaintiff asserts a claim for "return of property," alleging that BANA'S "alleged transfer of its February 'bid' for the Note to FHLMC prevents FHLMC from being a 'bona fide' purchaser at the foreclosure sale." (Docket Entry No. 61-1 at ¶ 112). Plaintiff alleges that "FHLMC knew in February 2014 that Bank of America had no right under the Deed of Trust to assign/transfer its February "bid" to any party," and that "[a]lthough it clearly could have only purchased the Property after the power of sale was invoked, FHLMC conspired with Bank of America to pretend that it had purchased the Note," demanding "$40,000.00+ more that it alleged paid for the Note to return the Property to [Plaintiff]." Id. at ¶ 113. 61-9

24

BANA, the lender, was the holder and servicer of the loan. (Docket Entry No. 61-10 at 8, 10; Docket Entry No. 61-13 at 1-12). A "holder" is entitled to enforce a promissory note. Foster Business Park, LLC v. J & B Investments, LLC, 269 S.W.3d 50, 55 (Tenn. Ct. App. 2008); Tenn. Code. Ann. § 47-3-301. "'By statute in Tennessee, a promissory note is a negotiable instrument, unless it contains a statement that it is non-negotiable, ... and thus may be transferred to another party who receives the right to enforce the instrument [.]" 'Moreover, under Tennessee law, [a] Deed of Trust need not be separately assigned so that the holder may enforce the note; as goes the note, so goes the Deed of Trust.'" Deutsche Bank Nat. Trust Co. v. Tibbs, No. 3:11–0763, 2014 WL 280365, at *5 (M.D. Tenn. Jan. 24, 2014).

A servicer collects mortgage payments, sends billing statements and provides daily serving of an account on the investor's behalf. (Docket Entry No. 61-10 at 8). See See 12 U.S.C. 2605 (i)(2) ("The term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."). FHLMC was the investor and owner of the loan. (Docket Entry No. 61-10 at 9; Docket Entry No. 61-13 at 1-12). FHLMC is a corporation chartered by Congress. 12 U.S.C. §1452. Under FHLMC's Guidelines, a servicer bids at a foreclosure sale based upon instructions by FHLMC. Reg. 66.32.[5] If the property is not purchased by a third party, the servicer "must ensure that title to the property is vested in [FHLMC's] name." Reg. 66.35. BANA was the lone bider and assigned this bid to FHLMC.

For the reasons stated previously, a claim as to the February foreclosure sale is mooted by the August foreclosure sale. The Court finds that Plaintiff's allegations on this claim are disjointed,

---

[5]See "the AllRegs guide" at http://www.freddiemac.com/singlefamily/guide/.

confusingly pled and difficult to decipher. Accordingly, the Court concludes that this claim should be dismissed as futile.

Plaintiff alleges that Defendant Rubin Lublin violated Tenn. Code. Ann. § 47-18-104(b)(39) because the Defendant represented that it conducted a foreclosure on the property in February when it "had actual and constructive knowledge that no sale had taken place." (Docket Entry No. 61-1 at ¶ 118). Tennessee Code Annotated § 47-18-104(a) (b)(39) provides:

> (a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.
>
> (b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
> . . .
>
> (39) Representing that a person, or such person's agent, authorized designee or delegee for hire, has conducted a foreclosure on real property, when such person knew or should have known that a foreclosure was not actually conducted on the real property[.]

Id. Section 47-18-109(a)(1) of the TCPA provides that:

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages.

Id.

Yet, assuming the February sale was defective, the only ascertainable loss that Plaintiff could have suffered was the loss of his real property. Yet, the August sale was undisputedly conducted, and thus, Plaintiff fails to show he suffered an "ascertainable loss" as a result of the allegedly faulty February foreclosure sale. Accordingly, the Court concludes that Plaintiff's TCPA claim should be denied as moot.

Next, Plaintiff asserts FDCPA claims against Defendants Rubin Lublin, FHLMC and BANA. "To state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity." Clark v. Lender Processing Servs., 562 F. App'x 460, 465-66 (6th Cir. 2014) (citing Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 459-60 (6th Cir. 2013)). "It is 'well-settled' generally that 'a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.'" Fox v. HSBC Mortg. Services, Inc., No. 3:06–CV–87, 2009 WL 129797, at *3 (E.D. Tenn. Jan. 16, 2009) (citing MacDermid v. Discover Fin. Servs., 488 F.3d 721, 735 (6th Cir. 2007) (quoting Stafford v. Cross Country Bank, 262 F.Supp.2d 776, 794 (W.D. Ky 2003)). The FDCPA defines the term "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). A "debt collector"is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . The term does not include--
>
> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
>
> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6). Being primarily in the business of extending credit is not enough to turn an entity into a debt collector under the FDCPA. Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 411 (6th Cir. 1998).

Here, FHLMC was the investor and owner of the loan and not the debt collector for purposes of the FDCPA. Baumgartner v. Wells Fargo Bank, N.A., No. 11-cv-14065, 2012 WL 2223154, at *7 (E.D. Mich. June 15, 2012). BANA, as the original servicer of the loan, is also not a debt collector. Bridge v. Ocwen Federal Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012). Further, Plaintiff does not adequately plead factual allegations that Defendant Rubin Lublin, BANA and FHLMC fit within the definition of a debt collector under 15 U.S.C. § 1692a(6). Dauenhauer v. Bank of New York Mellon, 562 F. App'x 473, 483 (6th Cir. 2014). Accordingly, for theses reasons, the Court concludes that this claim fails to state a claim.

28

With respect to Plaintiff's claims for violations of the Real Estate Settlement Procedures Act

("RESPA") 12 U.S.C. §§ 2601 et seq. and the Truth in Lending Act ("TILA") 15 U.S.C. §§1601 et

seq., Plaintiff alleges:

> 153. As shown by the numerous letters cited above and incorporated by reference, Bank of America (and its agents/attorneys Blank Rome, Rubin Lublin TN, PLLC and/or Rubin Lublin LLC) as servicer has misrepresented the Note's owner of as being FHLMC despite actual knowledge that the Deed of Trust required the Property to be sold, that the Property was in fact sold, and that it prepared and recorded a Substitute Trustee's Deed affirming that fact the Property was sold;

> 154. Despite these actions, Bank of America and FHLMC (and their agents/attorneys Blank Rome, Rubin Lublin TN, PLLC and/or Rubin) conspired together post-foreclosure sale to cover up the earlier sham sale, and the immediate transfer of the Property. A transaction by which Bank of America profited more than $22,000.00, and FHLMC profited over $40,000 – all at Mr. Kantz's expense;

> 155. After the faux-February foreclosure sale was exposed, Bank of America as servicer orchestrated a sham "assignment" from Bank of America to FHLMC to cover up its illegal profit;

> 156. Bank of America as the owner pre- and post- foreclosure sale of the Note, used Rubin Lublin TN PLLC, Rubin Lublin LLC, and FHLMC as its servicing agents to perpetrate this fraud on Mr. Kantz and the Court;

> 157. Mr. Kantz further requests actual damages of $160,000.00, statutory damages of up to $ 2,000 per violation, and a penalty of $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2), and attorney's fees and costs as permitted[.]

(Docket Entry No. 61-1 at ¶¶ 153-157) (emphasis in original).

Under RESPA, "[i]f any servicer of a federally related mortgage loan receives a qualified

written request ["QWR"] from the borrower (or an agent of the borrower) for information relating

to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of

the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless

the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). "Servicing" is defined

as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

A QWR is written correspondence that "includes, or otherwise enables the servicer to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). "'Within thirty days of receipt of a QWR the servicer must either make appropriate corrections to the borrower's account or, after investigation, provide a written explanation including a statement of reasons the servicer believes the account is correct or any other information requested by the borrower.'" Jestes v. Saxon Mortg. Servs., Inc., No. 2:11–00059, 2014 WL 1847806 at *6 (M.D. Tenn. May 8, 2014) (citation omitted); 12 U.S.C. § 2605(e)(2). Therefore, "to state a viable claim under RESPA, a plaintiff must show that he sent a correspondence which met the requirements of a QWR, that the servicer failed to timely respond, and that this failure caused plaintiff actual damages." Id. (citation omitted).

Plaintiff has not pled sufficient facts establishing that Defendant Rubin Lublin or FHLMC acted in servicing the loan as that term is defined under 12 U.S.C. § 2605(i)(3), nor has Plaintiff alleged that Defendant Rubin Lublin responded to any QWRs that serves as a bases for this claim. Hutchens v. Bank of America N.A., No. 3:11–CV–624, 2012 WL 1618316, at *5 (E.D. Tenn. May 9, 2012). Further, Plaintiff's bare allegations do not draw any connection with RESPA, QWRs or servicing the loan.

As to Plaintiff's TILA claim against Defendants, Plaintiff does not reference as to which section of the TILA that was violated or how. Also, "an action under TILA can be brought only against creditors or their assignees. 15 U.S.C. §§ 1640–1641. TILA defines a creditor as someone who both regularly extends consumer credit and is initially due payment for debt arising from a consumer-credit transaction. 15 U.S.C. § 1602(g). This definition does not include loan servicers." Mourad v. Homeward Residential, Inc., 517 F. App'x. 360, 364 (6th Cir. 2013). Based upon the pleadings and exhibits attached in support, Defendant Rubin Lublin is not a creditor in this action.

Accordingly, the Court concludes that these claims fail to state a claim and are therefore futile.

Finally, because Plaintiff's underlying claims fail to state a claim, Plaintiff's claim for civil conspiracy fails to state a claim and should be dismissed as futile. Lane v. Becker, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010). ("A claim for civil conspiracy 'requires an underlying predicate tort allegedly committed pursuant to the conspiracy.' Conspiracy, standing alone, is not actionable where the underlying tort is not actionable.") (citations omitted).

Accordingly, for these collective reasons, the Court concludes that Plaintiff's motion for leave to file third amended complaint should be denied.

## C. ANALYSIS OF THE SECOND AMENDED COMPLAINT

According to the second amended complaint, Plaintiff resides at 1244 Mary Helen Drive, Nashville, Tennessee, the property at issue in this action. (Docket Entry No. 23, ¶ 1). Defendant Rubin Lublin TN, PLLC was the substitute trustee acting on behalf of Bank of America, N.A. on February 20, 2014, id. at ¶ 2, and Defendant Rubin Lublin, LLC was either the substitute trustee acting on behalf of Bank of America, N.A. on February 20, 2014, or the entity responsible for and/or

directing Rubin Lublin, PLLC as substitute trustee on February 20, 2014. Id. at ¶ 3. Defendant Federal Home Loan Mortgage Corporation is an entity to which Bank of America N.A. allegedly sold Plaintiff's property. Id. at ¶ 4.

On or about December 20, 2007, Plaintiff and Sandra Lee entered into a note and deed of trust with Bank of America, N.A. in the principal amount of $391,800.00. Id. at ¶ 5; Docket Entry No. 30-1, Deed of Trust.[6] To secure repayment of the loan, Plaintiff and Lee conveyed the property via deed of trust to PRLAP, INC., as Trustee for Bank of America, N.A. (Docket Entry No. 30-1). Rubin Lublin TN, PLLC was appointed as Substitute Trustee for PRLAP, Inc. pursuant to the appointment of substitute trustee recorded on June 4, 2013. (Docket Entry No. 30-2, Appointment of Substitute Trustee).

"On or about January – February 2014, the Defendants allegedly caused to be published in a newspaper of local circulation (The Tennessee Tribune) notice of the foreclosure of [Plaintiff's] residence at 1244 Mary Helen Drive in Nashville, Tennessee." (Docket Entry No. 23 at ¶ 6). According to Plaintiff, written sales notice was not sent to Plaintiff or the junior mortgage holders. Id. at ¶ 7. On or about February 18, 2014, Plaintiff discovered that his property was about to be foreclosed and began taking steps to prevent the foreclosure sale, including contacting Bank of America via telephone and "junior lienholder." Id. at ¶ 8.

The foreclosure sale was set for February 20, 2014, at 11:00 AM on the front steps of the Davidson County Courthouse, Nashville Tennessee. Id. at ¶ 9. Plaintiff appeared at the courthouse approximately 20 minutes prior to the designated sale time and waited. Id. at ¶ 10. At

---

[6]As discussed supra, exhibits to a complaint are deemed to be part of the complaint, as are documents attached to a motion to dismiss that are referred to in the complaint and "central" to the claim.

approximately 10:50 AM, the only three (3) people standing outside the courthouse left. Id. at ¶ 11.

Plaintiff alleges that in Defendant Rubin Lublin's efforts to foreclose on Plaintiff's property "Rubin Lublin TN, PLLC and/or Rubin Lublin LLC were acting as 'debt collectors' as defined in 15 U.S.C.A. 1692(a)." Id. at ¶ 12.

At 11:00 AM and thereafter, no one appeared on behalf of Defendant Rubin Lublin to "cry the sale" at the allotted time and place. Id. at ¶ 13. Plaintiff inquired with Defendant Rubin Lublin as to why the sale was not properly cried and was informed by a representative of Defendant Rubin Lublin via email that the sale was properly cried. Id. at ¶¶ 15-16. Plaintiff alleges that:

> On or before February 28, 2014, Rubin Lublin TN, PLLC prepared a Substitute Trustee's Deed falsely asserting that a proper sale had been cried/conducted;
>
> On February 28, 2014, Rubin Lublin TN, PLLC's employee, Victor Kang, executed a Substitute Trustee's Deed asserting that a proper sale had been cried/conducted. This Substitute Trustee's Deed is a fraud upon Mr. Kantz and the public at large;
>
> This fraudulently prepared Substitute Trustee's Deed illegally conveyed the property to the Federal Home Loan Mortgage Corporation. [];
>
> By conducting a fraudulent foreclosure sale in which it was able to purchase the property at a lower "credit bid," Bank of America NA was able to immediately convey the property and/or assign its bid to the Federal Home Loan Mortgage Corporation at a profit, and thus benefitted from its own fraudulent conduct.

Id. at ¶¶ 17-20.

In his second amended complaint, Plaintiff seeks declaratory relief for the Court to determine that: (1) "Rubin Lublin TN, PLLC and/or Rubin Lublin LLC, acting as Substitute Trustee, failed to properly execute its duties under the Deed of Trust;" (2) "Rubin Lublin TN, PLLC and/or Rubin Lublin LLC, acting as Substitute Trustee, failed to appear and properly cry the foreclosure sale rendering the same invalid," and that the "intentional and wilful failure to cry the sale is a fraud upon

[Plaintiff] and the public;" (3) "the foreclosure sale is invalid and return [Plaintiff's] residence to him; (4) "Rubin Lublin TN, PLLC and/or Rubin Lublin LLC intentionally and wilfully misrepresented to Mr. Kantz that the foreclosure sale had been properly cried;" and (5) the Court award Plaintiff "actual damages in the amount of the fair market value of his residence, additional compensatory as may be proven at trial, and reasonable attorney's fees and costs as permitted under the Deed of Trust." Id. at ¶¶ 22-26.

Plaintiff asserts a "fraud in the foreclosure sale" based upon the allegation that "Rubin Lublin TN, PLLC and/or Rubin Lublin LLC committed intentional and willful fraud by their failure to comply with the Deed of Trust's requirements, including, but not limited to notice, proper crying of the sale, post-sale deception concerning the alleged sale, and the immediate sale/transfer of interest of the property to an insider at a non-fair market value," and seeks "actual and punitive damages and reasonable attorney's fees and costs as permitted under Tennessee law." Id. at ¶¶ 28-29.

As to Plaintiff's breach of contract claim, Plaintiff alleges that "Rubin Lublin TN, PLLC and/or Rubin Lublin LLC intentionally and willfully breached the Deed of Trust by failing to comply with the Deed of Trust's requirements, including but not limited to, notice, proper crying of the sale, post-sale deception concerning the alleged sale, and the immediate sale/transfer of interest of the properly to an insider at a non-fair market value," and seeks "actual and punitive damages and reasonable attorney's fees and costs as permitted under Tennessee law." Id. at ¶¶ 31-32.

Plaintiff's claim for "return of property" is asserted only against FHLMC. Plaintiff alleges that Defendant Rubin Lublin's transfer of its "bid" to the FHLMC prevents FHLMC from being a "bona fide" purchaser at the foreclosure sale and FHLMC "received the rights and obligations of the assignee Bank or America NA." Id. at ¶ 34. Plaintiff alleges that "[b]ecause [FHLMC] 'stands in

the shoes' of Bank of America N.A., [Plaintiff] may assert all claims against it that it could aver against the original mortgagor." Id. Plaintiff seeks return of his property, actual and punitive damages, reasonable attorney's fees and costs under Tennessee law. Id. at ¶ 35.

As to Plaintiff's TCPA claim for violation of Tenn. Code Ann. § 47-18-104(b)(39), Plaintiff alleges that:

> Rubin Lublin TN, PLLC and/or Rubin Lublin LLC misrepresented to Mr. Kantz and to the public at large that it "conducted a foreclosure on real property" when it had actual and constructive knowledge that no sale had taken place;

> Rubin Lublin TN, PLLC and/or Rubin Lublin LLC knew that the sale did not take place because it cancelled all three (3) or more of the scheduled sales in Davidson County on February 20, 2014;

> Rubin Lublin TN, PLLC and/or Rubin Lublin LLC actions in not conducting the foreclosure sale and then misrepresenting the same are per se violations of the Tennessee Consumer Protection Act[.]

Id. at ¶¶ 38-40. Plaintiff seeks actual and punitive damages and costs and attorney's fees. Id. at ¶¶ 41-42.

As to Plaintiff's FDCPA claim, Plaintiff alleges that:

> The Defendants' intentional and willful failure to comply with the deed of trust's requirements as to the foreclosure notice, proper crying of the sale, and post-sale deception concerning the sale, and its fraudulent transfer of the property in violation the F.D.C.P. Act;

> At all times Rubin Lublin TN, PLLC and/or Rubin Lublin LLC were acting as debt collectors as defined under 15 U.S.C.A. 1692(a);

Id. at ¶¶ 44-45. Plaintiff seeks "compensatory damages, statutory damages, punitive damages, and reasonable attorney's fees and costs as permitted under the F.D.C.P. Act." Id. at ¶ 46.

### D. CONCLUSIONS OF LAW

A review of the filings reflect that following the June 27, 2014 case management conference, Plaintiff attempted to purchase the property for $200,000 "for free and clear title." (Docket Entry No. 71-2). In a letter dated July 11, 2014, FHLMC informed Plaintiff that it rejected Plaintiff's offer. (Docket Entry No. 71-1). FHLMC, however, informed Plaintiff that if Plaintiff wished to purchase the property he could do so by paying the entire indebtedness in full. Id. Plaintiff does not allege that he attempted to do so. Thereafter, as authorized by the Court at the June 27, 2014 case management conference, Defendant Rubin Lublin advertised and conducted a second foreclosure sale at which time the substitute trustee, Defendant Rubin Lublin, placed a credit bid for Bank of America, N.A. ("BANA"), the lender, bidding $398,126.15. (Docket Entry No. 61-14; Docket Entry No. 47-1 at 1; Docket Entry No. 43). The bidding instructions provided, "Start opening bid at $398,126.15. If a third party bids, then immediately enter a bid on behalf of the lender of $461,359.51. The party may sell to a third party for anything over $461,359.51." (Docket Entry No. 43-1). BANA assigned its bid to FHLMC. A substitute trustee's deed was prepared, reflecting and conveying the property to FHLMC. The substitute trustee's deed was recorded on September 2, 2014, in the Register's Office for Davidson County, Tennessee. (Docket Entry No. 47-1).

FHLMC contends that whatever improprieties, if any, occurred at the initial sale of the property on February 20, 2014, they were cured by the second foreclosure sale on August 26, 2014 and that Plaintiff is divested from any interest in the property. As Plaintiff's only claim against Defendant FHLMC is for for "return of property," the subsequent August foreclosure sale that was properly noticed and cried renders this claim moot.

As to Defendant Rubin Lublin, Plaintiff seeks declaratory relief for the Court to declare that Plaintiff is the owner of the Property because the February sale allegedly was not cried at the

36

February foreclosure sale. Here, if the February sale did not take place, then the deed of trust was properly foreclosed in August and the substitute trustee's deed from February is a nullity, but if the February sale took place without issue, then the August deed is a nullity. Regardless of the situation, Plaintiff's interest in the property was divested, and title is vested in FHLMC. Thus, there is no case of actual controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 127. Therefore, Plaintiff's request for declaratory relief should be denied as moot.

Plaintiff's claim for "fraud in the foreclosure sale" is based upon the allegations that Defendant Rubin Lublin intentionally committed fraud by its failure to comply with the deed of trust's requirements to notice and cry the sale and by its post-sale deception concerning the alleged sale and the immediate transfer of interest of the property to an insider at a non-fair market value.

Because the August foreclosure sale cured any alleged defects from the February sale, Plaintiff has been placed in the same position he would have been had the alleged fraud not occurred. Walker, 249 S.W.3d at 311 (plaintiff must show that damage suffered as a result of the misrepresentation); Harrogate Corp., 915 S.W.2d at 817 ("The proper measure of damages for fraud is that the injured party should be compensated for actual injuries sustained by placing him or her in the same position he or she would have been had the fraud not occurred."); Keith, 780 S.W.2d at 755 ("Punitive damages cannot be recovered in the absence of actual damages."). Thus, the Court concludes that Plaintiff's fraud claim should be dismissed as moot.

As to Plaintiff's breach of contract claim under Tennessee law, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." Arc LifeMed, Inc., 183 S. W.3d at 26; Life Care Ctrs., 79 F.3d at 514. "The purpose of assessing

37

damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have been in had the contract been performed. However, it is well settled law that the injured party is not to be put in a better position by recovery of damages for breach of contract than he would have been in if the contract had been fully performed." Action Ads, 592 S.W.2d at 575.

Here, Plaintiff was given an opportunity to retain the property. The August foreclosure sale was properly noticed and cried. Plaintiff was placed, as nearly as possible, in the same position he would have been at the February foreclosure. Thus, Plaintiff fails to show any damages if a breach occurred in February. Accordingly, the Court concludes that this claim should be dismissed as moot.

Next, Plaintiff alleges that Defendant Rubin Lublin violated Tenn. Code Ann. § 47-18-104(b)(39) of the TCPA by misrepresenting to Plaintiff and the public that it "'conducted a foreclosure on real property' when it had actual and constructive knowledge that no sale had taken place.'" (Docket Entry No. 23, at ¶ 38).

Tennessee Code Annotated § 47-18-104(a) (b)(39) provides:

(a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.

(b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

. . .

(39) Representing that a person, or such person's agent, authorized designee or delegee for hire, has conducted a foreclosure on real property, when such person knew or should have known that a foreclosure was not actually conducted on the real property[.]

Id. Section 47-18-109(a)(1) of the TCPA provides that:

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages.

Id.

Assuming the February sale was not actually cried, the only ascertainable loss that Plaintiff could have suffered was the loss of his real property. Yet, the August sale was undisputedly conducted, and thus, Plaintiff fails to show he suffered an "ascertainable loss" as a result of the allegedly faulty February foreclosure sale. Accordingly, the Court concludes that Plaintiff's TCPA claim should be denied as moot.

Lastly, Plaintiff alleges a violation of the FDCPA based upon Defendant Rubin Lublin's "intentional and willful failure to comply with the deed of trust's requirements as to the foreclosure notice, proper crying of the sale, and deception concerning the sale, and its fraudulent transfer of the property in violation of the F.D.C.P. Act." (Docket Entry No. 23, at ¶ 44).

> Under the FDCPA, plaintiffs may recover "statutory" damages, "actual" damages, and attorney's fees and costs-each requiring different proof. 15 U.S.C. § 1692k(a). As one court has explained, "all that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling." Saving v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998). All that a plaintiff must do to obtain statutory damages is prove that the defendant violated the FDCPA. As the Court of Appeals for the Sixth Circuit has explained, the FDCPA calls for "strict liability ... meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages." Fed. Home Loan Mortg. Corp., 503 F.3d 504, 513 (6th Cir. 2007).

Sewell v. Allied Interstate, Inc., No. 3:10–CV–113, 2011 WL 32209, at *4 (E.D. Tenn. Jan. 5, 2011).

For the reasons stated previously, the Court concludes that because the August foreclosure sale cured any alleged defects from the February foreclosure sale, any claim for actual damages

should be dismissed as moot. Yet, as the FDCPA is a strict liability statute and a plaintiff may recover statutory damages even if the plaintiff did not suffer any actual damages, the Court concludes that Plaintiff's FDCPA claim is not mooted by the August foreclosure sale. Defendant Rubin Lublin, however, contends that Plaintiff's claim should be dismissed for failure to state a claim as addressed in its Rule 12(b)(6) motion.

As to Plaintiff's FDCPA claim asserted in his second amended complaint against Defendant Rubin Lublin, "[t]o state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity." Clark, 562 F. App'x at 465-66 (citing Glazer, 704 F.3d at 459-60). Here, Plaintiff's pleading is deficient as he fails to specify which provision of the FDCPA Defendant Rubin Lublin allegedly violated. See Martin v. Convergent Outsourcing, Inc., No. 1:CV-14-0377, 2014 WL 866499, at *4 (M.D. Pa. March 5, 2014); Holbrook v. Aurora Loan Services LLC, No. 2:09-cv-05682-CAS-AGRx, 2010 WL 986794, at *5 (C.D. Cal. March 15, 2010) (citing Harrington v. Home Capital Funding, Inc., No. 08-CV-1579, 2009 WL 514254, at *4 (S.D. Cal. March 2, 2009)) (dismissing FDCPA claim because "critically, plaintiff fails to specify any particular provision of the FDCPA that defendants violated."); Gonzalez v. Asset Acceptance, LLC, No. 2:07-cv-415-FtM-29SPC, 2008 WL 1930625, at *1 (M.D. Fla. April 30, 2008).

Moreover,

To succeed on a claim under the FDCPA, a plaintiff must show that the money or property being collected qualifies as a "debt." 15 U.S.C. § 1692a(5). Second, the collecting entity must qualify as a "debt collector." 15 U.S.C. § 1692a(6). Third, a plaintiff must show that the debt collector violated a provision of the FDCPA, 15 U.S.C. §§ 1692 et seq.

40

> As a threshold matter, the court must determine whether defendants are "debt collectors" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6). As a matter of law, liability under the FDCPA can only attach to those who meet the statutory definition of a "debt collector."

Sumner v. Smith, No. 3:11–CV–120, 2012 WL 4711995, at *2 (E.D. Tenn. Oct. 3, 2012).

The FDCPA defines a "debt collector" "as any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "In determining whether a party is a 'debt collector,' the focus 'is not on the events of the particular transaction but on the principal purpose of the defendant's business and/or the defendant's regular activities.'" Stamper v. Wilson & Assocs., P.L.L.C., No. 3:09-cv-270, 2010 WL 1408585, at *8 (E.D. Tenn. March 31, 2010) (quoting Overton v. Foutty & Fourtty, LLP, No. 1:07-cv-0274-DFH-TAB, 2007 WL 2413026, at *4 (S.D. Ind. Aug. 21, 2007)). To state a claim under the FDCPA, a plaintiff must allege more than a defendant is a "debt collector." Id. Here, Plaintiff does not adequately plead factual allegations that Defendant Rubin Lublin fits within the definition of a debt collector under 15 U.S.C. § 1692a(6). Dauenhauer, 562 F. App'x at 483. Here, Plaintiff fails to allege sufficient facts to establish a claim. Thus, the Court concludes that this claim should be dismissed.

As the Court concludes that Defendants' motions to dismiss should be granted, the Court concludes that Plaintiff's motion for partial summary judgment should be denied as moot.

## E. CONCLUSION

Accordingly, for these reasons, the Court concludes that Defendant Rubin Lublin's motions to dismiss (Docket Entry Nos. 29 and 49), Defendant FHLMC's motions to dismiss (Docket Entry

No. 47) and Plaintiff's motion to accept memorandum of law in support of response (Docket Entry No. 68) should be granted; and Plaintiff's motions for leave to file third amended complaint (Docket Entry No. 61), for clarification of response dates and/or request for briefing schedule (Docket Entry No. 67), and for partial summary judgment (Docket Entry No. 72) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 6ᵗʰ day of April, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge